Shauck, J.
The case is to be determined by the fact that the plaintiffs in the original case sued only Tor the special damages resulting from the failure to secure a cargo for the steamer pn *21 her trip from Buffalo to Toledo, and the question whether a case is made which charges the telegraph company with legal liability for the special loss so occasioned. An intelligent test for such liability was stated in Hadley v. Baxendale, 9 Exchequer, 341. The doctrine in that case has been commended in very many cases, and has been repeatedly recognized as determining the law. of this state in all cases to which it is applicable. It was stated and applied to a case quite like this in the First National Bank of Barnesville v. The Western Union Telegraph Co., 30 Ohio St., 555. The second proposition of the syllabus states the doctrine to be: “In case of failure to deliver a telegraphic message, the company is only liable for such damages as naturally flow from the breach of contract, or such as may fairly be supposed to' have been within the contemplation of the parties, at the time the contract was made.” That the phrases “such damages as naturally flow from the breach of the contract” and “such as may fairly be supposed to have been within the contemplation of the parties” are equivalent statements quite clearly appears from the opinion, in which it is said: “In considering what damages may be supposed to have been fairly within the contemplation of the parties, there was nothing in this dispatch to inform the telegraph company of the serious consequences that are now presented.” It also appears from the conclusion reached upon the facts in that case. Considering the terms of the telegram delivered by the plaintiff in the present, case for transmission to the captain of the steamer at Buffalo, and all the circumstances attending *22 its delivery, what was there to apprise the company that the loss of a cargo or other loss of like character might result from a failure to deliver the telegram? The evidence shows that the managing owner of the vessel had returned from Buffalo but a few hours before he deposited the message for transmission, and it may be that from conversations which he there had with him the captain would have understood, if he had received the telegram, that it referred to a cargo of coal of which he would be advised by telegram the following morning. With that understanding of the significance of the message he would naturally have regarded it as equivalent to a direction to remain at the dock at Buffalo until he should receive the telegram which was to follow. But the rule by which the liability of the company is to be tested requires that such significance should have been suggested to it by the message transmitted or by the circumstances of its transmission, or by another telegram. The message “Will wire you in the morning about coal” suggested no such significance to the company. All of the terms of the message, and all of the circumstances disclosed, would have been answered by assuming it to be a telegram relating to coal for the bunkers of the steamer. Instead of suggesting an order to the captain to remain at the dock until morning, it was rather an assurance that he would remain there to receive the proposed message the next morning, whether the present message was delivered or not. Nothing in the terms of the message then sent, or in any preceding message, or in any circumstances, suggested to the com *23 pany that the captain was likely to leave the dock, or that results like those for which indemnity is now sought were in any way involved.
Furthermore, presumption cannot be invoked to show that the company was at fault with respect to the deliveiy of the message. Whether it was competent or not, the steamer’s log was introduced in evidence. It showed that it left Buffalo at 3:40 a. m., but is silent as to the time when it left the dock to which th^ message was addressed. That was made more definite by the telegram from the company’s office at Buffalo to its office at Toledo stating that the steamer had left the dock at about midnight before the messenger arrived with the telegram which had been received at the office at 11:10. This was introduced by the plaintiffs perhaps for the purpose of showing the company’s admission that the steamer had left the dock before the receipt of the telegram of the next morning. Although the plaintiffs introduced this evidence as to the time when the steamer left the dock, they would perhaps not have been precluded by it if they had produced evidence to show that the time of its leaving the dock was so much later as to leave ample time for the delivery of the message under all the circumstances. This they did not do. The record shows that the captain had died before the trial, but failure to call one of the mates, or a member of the crew, must be taken as an admission of the plaintiffs that they could not establish a later hour for the steamer’s departure from the Buffalo dock than that fixed by the telegram which they had introduced.
*24 The obligation of the plaintiff in a case of this character to produce evidence to show the failure' of the company to make a timely delivery of a message, should be distinguished from the doctrine of the Telegraph Company v. Griswold, 37 Ohio St., 301, where it was held that in an action for damages for the inaccurate transmission of a message, the inaccuracy having been shown, the burden is upon the company to show that the mistake was not attributable to its fault. The presumption which was there indulged, after prima facie case had been made against the company, may' not be indulged here for the purpose of making a prima facie case.
The judgment of the circuit court will be reversed, and that of the court of common pleas affirmed.

Judgment reversed.

Summers, C. J., Crew, Spear, Davis and Price, JJ., concur.